UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH ALLEN GREEN, | No. 2:22-cv-0295 DB |
| Plaintiff, | |
| v. | ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security[1], | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff argues that the Administrative Law Judge failed to properly evaluate the medical opinion evidence. For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings.

---

[1] After the filing of this action Kilolo Kijakazi was appointed Acting Commissioner of Social Security and has, therefore, been substituted as the defendant. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF No. 11.)

1

## PROCEDURAL BACKGROUND

In August of 2018, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on December 20, 2016. (Transcript ("Tr.") at 235.) Plaintiff's alleged impairments included status post left inguinal surgical repair, depressive disorder, and cognitive disorder. (Id. at 238.) Plaintiff's applications were denied initially, (id. at 257-60), upon reconsideration, (id. at 272-76), and after an administrative hearing. (Id. at 244.) However, on March 3, 2020, the Appeals Council remanded the matter for a new decision. (Id. at 253.)

On July 16, 2020, and April 26, 2021, administrative hearings were held before an Administrative Law Judge ("ALJ"). (Id. at 67-88, 39-66.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 42-46.) On August 26, 2021, the ALJ issued a decision finding, again, that plaintiff was not disabled. (Id. at 31.) The ALJ entered the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since December 20, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: psychosis, depressive disorder, neurocognitive disorder, and history of polysubstance abuse (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple tasks in a setting with few workplace changes; no work at a fixed production rate pace; no more than occasional interaction with the general public, co-workers, and supervisors.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born [in] 1965 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.  He is currently an individual of advanced age.  (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 20, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 18-30.)

On December 20, 2021, the Appeals Council denied plaintiff's request for review of the ALJ's August 26, 2021 decision.  (Id. at 1-5.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on February 16, 2022.  (ECF. No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)).  If, however, "the record considered as a whole can reasonably support either affirming or

////

3

reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion asserts that the ALJ failed to properly evaluate the medical opinion evidence as it pertained to plaintiff's mental impairment. (Pl.'s MSJ (ECF No. 12) at 13-19.[3]) For claims filed prior to March of 2017, Ninth Circuit's precedent established a hierarchy for medical opinions based on the physician's relationship to the plaintiff. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) ("Cases in this circuit distinguish among the opinions of three

---

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."). In 1991, the Commissioner promulgated regulations consistent with the Ninth Circuit's hierarchy. See 56 Fed. Reg. 36932-01, 1991 WL 142361 (Aug. 1, 1991).

On March 27, 2017, however, revised Social Security Administration regulations went into effect regarding the evaluation of medical opinions. Pursuant to those regulations, "the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion.'" V.W. v. Comm'r of Soc. Sec., No. 18-cv-07297-JCS, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); see also 20 C.F.R. § 404.1520c(a). In place of specific evidentiary weight, the Commissioner will "evaluate the persuasiveness of medical opinions" based on (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c)(1)-(5), § 416.920c(a), (c)(1)-(5).

While the ALJ will consider all of the above factors, "the ALJ must explain how he considered the two 'most important factors'—supportability and consistency." Crystal R. E. v. Kijakazi, Case No. 20-cv-0319 SH, 2022 WL 446023, at *6 (N.D. Okla. Feb. 14, 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability concerns how "relevant the objective medical evidence and supporting explanations presented by a medical source are[.]" 20 C.F.R. § 404.1520c(c)(1). The more relevant evidence and support presented "the more persuasive the medical opinion[] . . . will be." (Id.) With respect to consistency, "[t]he more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources . . . the more persuasive the medical opinion . . . will be." (Id.)

In this regard, the new regulations "still require that the ALJ provide a coherent explanation of [her] reasoning," and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator

or court." Hardy v. Commissioner of Social Security, 554 F.Supp.3d 900, 906 (E.D. Mich. 2021). Thus,

> [e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate . . . how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, id § 404.1520c(b)(2).

Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022).

Here, on October 30, 2018, Dr. Ona Stiles examined plaintiff and completed a "comprehensive psychological evaluation . . . at the request of the Department of Social Services." (Tr. at 873.) Dr. Stiles reviewed plaintiff's medical records and administered a complete psychological evaluation, the Wechsler Adult Intelligence Scale-4th edition (WAIS-IV), the Wechsler Memory Scale-4th edition (WMS-IV), and the Trail Making Test (TMT). (Id.)

Based on this evaluation Dr. Stiles opined that plaintiff would be significantly limited in the ability to understand, remember, and perform complex instructions, to perform work activities on a consistent basis, and to deal with the usual stresses encountered in a competitive work environment. (Id. at 880.) Plaintiff would be moderately to significantly limited in the ability to maintain regular attendance, perform work activities without special supervision, to complete a normal workday or workweek without interruptions, and to interact with coworkers and the public. (Id.) And that plaintiff would be moderately limited in the ability to accept instructions. (Id. at 881.)

The ALJ found Dr. Stiles' opinion to be "not persuasive" asserting that it was "not consistent with the claimant's ability to continue to work[] as a chef at substantial wages through 2011, which was many years after the alleged head injury that seems to form the basis for Dr. Stiles' opinion." (Id. at 27.) However, Dr. Stiles' opinion explains that plaintiff's testing revealed "significant discrepancies between and within index scores to indicate a possible Cognitive Disorder due to head injury." (Id. at 880.) Dr. Stiles explained that because plaintiff "reported no history of learning difficulty or special education" Dr. Stiles assumed that plaintiff's

6

"current cognitive impairments are due to [the] head injury and not longer standing cognitive impairments." (Id.) In this regard, it was plaintiff's test results that formed the basis for Dr. Stiles' opinion, not the head injury.

Moreover, at the July 16, 2020 hearing, medical expert Dr. Elissa Benedek testified at the Commissioner's request as an "impartial expert." (Id. at 72.) Dr. Benedek opined that plaintiff's mental impairment met "the general criteria for [Listing] 12.04 a depressive disorder."[4] (Id. at 73.) The ALJ asked Dr. Benedek to cite to objective findings to support that opinion and Dr. Benedek cited to "Exhibit 2F, Pages 4 and 5, Exhibit 4F, Pages 4 and 5, Exhibit 9F, Page 1, Exhibit 10F . . . . Pages 3, 4, 7, 11 . . . Exhibit 13F, Page 3 and 5." (Id. at 73-74.)

The ALJ then asked Dr. Benedek how those exhibits supported Dr. Benedek's opinion, limiting Dr. Benedek's answer to "not in a whole lot of detail but just a little more detail." (Id. at 74.) Dr. Benedek explained that all the cited exhibits "make the diagnosis." (Id.) Exhibit 9F—Dr. Stiles' opinion—discussed the severity. (Id.) Exhibits 2F and 10F related to symptoms of depression. (Id. at 74-75.) And that all the exhibits related to "the discussion of irritable mood, a depressed mood, loss of interest, feelings of hopelessness, suicidal ideation, sleep disturbance and appetite changes." (Id. at 75.) Dr. Benedek also opined that plaintiff had marked limitation in applying information and in concentration, persistence and pace, and was moderately limited with respect to "managing himself." (Id. at 27.)

As with Dr. Stiles' opinion, the ALJ found Dr. Benedek's opinion "not persuasive" asserting that it "was based primarily on a one-time evaluation conducted by Dr. Stiles." (Id. at 27.) How the ALJ determined that Dr. Benedek's opinion was based primarily on Dr. Stiles' opinion, or why that was impermissible, is not explained.

The ALJ also stated that "while Dr. Benedek indicated that the claimant had a marked limitation in understanding and applying information, Dr. Stiles indicated the claimant had no

---

[4] At step three of the sequential evaluation, the ALJ must determine whether a claimant's impairment or impairments meet or equal one of the specific impairments set forth in the Listings. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The physical and mental conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester, 81 F.3d at 828.

7

1 limitation in his ability to understand and carry out simple instructions." (Id.)  The import of this
2 statement is entirely unclear.

3     Dr. Stiles opined that plaintiff was not limited with respect to the ability to understand,
4 remember and perform simple instruction but was significantly limited with respect to complex
5 instructions. (Id. at 880.) In questioning Dr. Benedek, however, the ALJ referred to simple and
6 complex instructions together, asking Dr. Benedek to "take those two together," and provide an
7 opinion. (Id. at 79.) In response, Dr. Benedek opined that plaintiff would have a marked
8 limitation in the ability to understand, remember, and apply information. (Id.)

9     With respect to both Dr. Stiles and Dr. Benedek's opinions, the ALJ vaguely asserted that
10 they were "not consistent with other opinions in the record." (Id. at 27.) Exactly how they are
11 not consistent in unclear. This is especially problematic given that the ALJ took issue with
12 almost every medical opinion of record pertaining to plaintiff's mental impairment. In this
13 regard, "State agency psychiatric and psychological consultants" J. Schnitzler and Jonathan
14 Brandon found plaintiff "had mild to moderate mental health limitations" that limited plaintiff to
15 "1-2 step jobs." (Id. at 26, 228.) The ALJ found their opinions were "not persuasive because it is
16 not consistent with other opinions in the record[.]" (Id.)

17     The only opinion regarding plaintiff's mental impairment that the ALJ found fully
18 persuasive was an opinion by Dr. David Peterson. (Id.) In this regard, on June 6, 2021, Dr.
19 Peterson completed a Medical Interrogatory-Mental Impairments-Adults form at the ALJ's
20 request. (Id. at 1008.) Dr. Peterson's answers were based on a review of plaintiff's medical
21 record and not on an examination. (Id. at 1009.) Dr. Peterson opined that plaintiff was
22 moderately limited in the ability to understand, remember, and apply information, with respect to
23 concentration, persistence, and pace, and "Managing Oneself." (Id. at 1015.)

24     The ALJ asserts in a vague and conclusory manner that Dr. Peterson's opinion was
25 persuasive because Dr. Peterson "reviewed all available medical evidence and provided a detailed
26 rationale in which he cited specific findings and evidence[.]" (Id. at 25.) Dr. Peterson's opinion,
27 however, was based only on a review of plaintiff's medical records and consisted of short
28 answers to interrogatory questions. In contrast, Dr. Stiles' opinion is a lengthy narrative

supported by review of plaintiff's medical records, examination, and testing, that provides a detailed rationale based on cited evidence.

Throughout the ALJ's evaluation of the medical opinion evidence the ALJ repeatedly relies on plaintiff's lack of treatment and activities of daily living to justify rejecting the opinions. However,

> [c]ourts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology.

Averbach v. Astrue, 731 F.Supp.2d 977, 986 (C.D. Cal. 2010) (quoting Sanchez v. Apfel, 85 F.Supp.2d 986, 992 (C.D. Cal. 2000)).  The Ninth Circuit has

> . . . particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'

Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-300 (9th Cir. 1999) (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)).

Moreover,

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance, as she would be by an employer.  The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012).

In short, at least five doctors found that plaintiff suffered from some degree of mental impairment—Dr. Stiles, Dr. Benedek, Dr. Peterson, Dr. Schnitzler, and Dr. Brandon.  Three doctors—Dr. Stiles, Dr. Benedek, and Dr. Peterson—opined that plaintiff was at least moderately impaired in several areas of mental functioning.  Two doctors—Dr. Stiles and Dr. Benedek—

found plaintiff's limitations to be even greater. Of those three, Dr. Stiles was the only doctor to base their opinion on records review, examination, and testing. Yet, the ALJ rejected, in whole or part, four of the opinions as "not consistent with other opinions in the record," but adopted Dr. Peterson's opinion by asserting that it was "generally consistent with other opinions in the record." (Id. at 25.) Beyond vague and conclusory assertions the ALJ does not explain how the various opinions are supportable and/or consistent.

> The regulations are clear and imperative in defining the mode of analysis. All medical sources are to be considered, and a rationale articulating how the ALJ applied the factors specified in the regulations must be stated for each source. . . . The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail how the factors actually were applied in each case, to each medical source.

Hardy, 554 F.Supp.3d at 909; see also Loucks v. Kijakazi, 21-1749, 2022 WL 2189293, at *2 (2nd Cir. 2022) ("the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"); Dogan v. Kijakazi, Civil Action No. 6:21-3291 RMG, 2022 WL 4092461, at *4 (D. S.C. Sept. 7, 2022) ("where . . . there is significant record evidence supporting Plaintiff's claim of disability and the regulation requires the ALJ to consider all of the factors under 404.1520c(c), the Court cannot confirm that this was actually done without the ALJ confirming he considered all five factors set forth in § 404.1520c and explaining how he weighed those factors"); Cooley v. Commissioner of Social Security, 587 F.Supp.3d 489, 500 (S.D. Miss. 2021) ("significant gaps exist in the ALJ's discussion of Dr. Tanious' medical opinion that leave this Court unable to build a 'logic bridge' between the evidence and his finding").

Accordingly, plaintiff is entitled to summary judgment on this claim.

**CONCLUSION**

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, plaintiff argues this matter should be remanded for further administrative proceedings. (Pl.'s MSJ (ECF No. 12) at 19.) The court agrees.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 13) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for further proceedings consistent with this order; and

5. The Clerk of the Court shall enter judgment for plaintiff and close this case.

Dated: September 11, 2023

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\green0295.ord

11